8

*United States*
*vs.*
*Sundry goods   &c*

filed 18ᵗʰ Septᵇᵉʳ 1805

S   Sibley, Atty for U. S.

*Replications   etc.*

And the said United States of America in replication and answer to the prayer and claim of the above named Isaac Bissell Junʳ & Henry Fitch in manner and form by them made and set forth, to the possession of and property in and to the above mentioned goods, wares & merchandizes, consisting of Lumber, Towit four thousand nine hundred & Sixty Eight feet of pine board, Three Thousand Two hundred and forty nine feet of pine Plank (Board measure) One Thousand Nine hundred and Seventy five feet of pine weather Board and Twelve packs of pine Shingles, Seized and detained by the above named Joseph Wilkinson, Collector of the Said United States Customs, for the District of Detroit, as in the above libel is set forth, say, that for any thing contained in and set forth by the said claim and answer of the said Isaac & Henry above mentioned, The said goods, wares and merchandizes, consisting of Lumber &c as set forth in the libel aforesaid, ought not to be given up to and restored to them the said Isaac & Henry. Because the sᵈ United States say, That the said goods wares and merchandizes, consisting of Lumber, Towit, Four Thousand, nine hundred and sixty Eight feet of pine board, Three Thousand Two hundred and forty nine feet of pine Plank (board measure) one Thousand nine hundred and Seventy five feet of pine weather Board and Twelve packs of pine Shingles, were heretofore that is to say, upon the sixth day of July in the year of our Lord One Thousand Eight hundred and five, brought by water in a certain craft commonly called a raft, from a foreign port or place in his Britanic Majestys dominions in America, called upper Canada, to a port or place within the Said United States, To wit, the district of Detroit in the territory of Michigan above mentioned. Which Said Goods, Wares & Merchandizes, consisting of lumber last mentioned, and before the day of filing the aforesᵈ Libel, To Wit, on the said sixth day of July in the year of our Lord One Thousand Eight hundred and five aforesᵈ at and within the said District of Detroit, were wrongfully and without the cause of the sᵈ Isaac & Henry in their answer set forth,

unladen and brought into said District, without any permit, licence or other lawful authority whatsoever, first had and obtained for so doing from the Collector of the s<sup>d</sup> United States District of Detroit, The said Joseph Wilkinson, then and still being Collector of Customs for s<sup>d</sup> District, duly commissioned &c. and having the sole authority, within said District, to grant Permits in such cases. By reason whereof & by force of the Statute law of the said United States in such case made and provided, the goods wares and merchandizes consisting of lumber, &c as afores<sup>d</sup> so seized and libelled as afores<sup>d</sup> have become forfeited to the said United States, without that that the said Isaac & Henry were upon the Twenty nineth day of June in the year of our Lord one thousand Eight hundred & five, possessed in their own right of one certain raft of Lumber, consisting of Boards, plank & shingles, as of their own proper Goods then lying in the province of Upper Canada, & nearly opposite to the port of Detroit, whereof the afores<sup>d</sup> Four thousand nine hundred and sixty Eight feet of pine boards, Three Thousand two hundred and forty nine feet of pine plank (board measure) One Thousand nine hundred and seventy five feet of pine weather board and Twelve packs of pine shingles in the information or Libel aforesaid mentioned were part and parcel, and that they being so possessed, afterward, To wit on the same Twenty-nineth day of June afores<sup>d</sup> in the year afores<sup>d</sup> To wit at Detroit afores<sup>d</sup> in the port of Detroit afores<sup>d</sup> applied to and obtained from the said Joseph Wilkinson Collector &c. a permit from under the hand of the said Collector, to land at Detroit in the port of Detroit afores<sup>d</sup> from upper Canada &c. all the afores<sup>d</sup> raft of Lumber consisting &c. as in and by the said claim and answer of the said Isaac & Henry so filed & made, is set forth. Wherefore the said United States as aforesaid pray Judgm<sup>t</sup> That the said Goods, Wares & Merchandizes, consisting of Lumber, as set forth in said libel & for the causes therein mentioned & such other causes as may appear may be condemned by the Definitive sentence & final Decree of this Court, as forfeited to the use of said United States, according to the statute in such case made and provided &c together with costs &c.      Sol. Sibley A<sup>ty</sup>

[In the handwriting of Solomon Sibley]

A.

A.

Deposition
filed in Court

[Case 4, Paper 4]

Territory of Michigan, to wit;

On this day Saturday, the third day of august, one thousand eight hundred five, at Detroit in the Territory of Michigan, personally appeared

before me the subscriber, one of the judges of the Territory of Michigan, Luther Cooley, proposed to be examined as a witness, also Solomon Sibley esquire counsel in this behalf on the part of the United States of America, and Elijah Brush esquire counsel for Henry Fitch and Isaac Bissell, together with the said Henry Fitch, and by consent of the parties, and pursuant to an act of the Congress of the United States entitled an act to establish the judicial courts of the United States, and of another act entitled an act to extend jurisdiction in certain cases to the Territorial courts, the said Luther Cooley being a resident of Upper Canada, and about to go out of the United States, and living at a greater distance from Detroit than one hundred miles, I have in consequence of the premises proceeded to take the deposition of the said Luther Cooley, as follows, to wit.

The said Luther Cooley, of the age of thirty six years, farmer, being first duly sworn, according to law, deposes and says, that he assisted the said Fitch and Bissell on or about last day of June last, to bring over a quantity of boards from the British to the American side of Detroit river, and to land the same, that a quantity amounting as the deponent believes to twenty four thousand feet were landed below the town on, or about the last day of June, and a quantity amounting as this deponent believes to fourteen thousand feet were landed on the fourth day of July above the town, or at the upper end thereof; this deponent attended the raft in each instance from about half a mile above the house of Angus M<sup>c</sup>Intosh on the British side, over to the American. The current not allowing them to get to shore above the town with the first quantity of twenty four thousand they landed below the town. In landing the second quantity they were forced by the wind up the river, and could not have got down to the place where the first quantity was landed. The raft in its original state was as rafts are usually made, very compact and firmly bound together. The reason why the whole was not brought over together was that they could not get hands enough to bring the whole the first time. A quantity of twelve or fourteen thousand feet was landed on the British side which this deponent understood from the said Fitch and Bissell not to be partnership property like the rest of the raft but in the special charge of Fitch. Each quantity landed on the American side was put together completely in the manner of a raft. Before the second quantity was landed Isaac Bissell observed to the deponent he was dubious about taking it over without another permit, alledging that Doctor Wilkinson the collector was prejudiced against him and would lay hold of any irregularity. The deponent advised him that in his opinion another permit was not necessary. When taken over before there was any seizure the said Fitch requested this deponent while he was drawing them from the water to the land, and assorting them according to their lengths, that he would keep an exact account of them, as he the said Fitch would have to render an account of

them as he would have to pay the duty on them. The deponent understood from Bissell before any boards were brought over, & after the permit obtained, that the whole raft was to be taken over to the American side excepting the quantity before spoken of to be landed on the British side. Given under my hand the day and year aforesaid, at the house of James May, the deponent countersigning the same in identification at the time of my signature.

LUTHER COOLEY                        AUGUSTUS B. WOODWARD.

[In the handwriting of Augustus B. Woodward]